UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

AUG 2 9 2025

Nathan Ochsner, Clerk of Court

CHARLES D. COLLINS                          *
                                            *
            PLAINTIFF                        *
                                            *
V.                                          *    Civil No.: _____
                                            *
HOUSTON INDEPENDENT SCHOOL DISTRICT         *
                                            *
            DEFENDANT                        *

COMPLAINT
Jury Trial Demanded

COMES NOW, Charles D. Collins, plaintiff pro se, files this cause of action against his former employer, the Houston Independent School District, for redress in violation of his rights. As more specifically set forth below, the plaintiff Charles D. Collins has been subjected to violations of law in the terms, conditions, and privileges of his employment in violation of Title VII, Title I of the Americans with Disabilities Act 1990 (ADA) and its amendments 2008 (ADAAA), Title 18, and Chapter 21 of the Texas Labor Code.

PARTIES

1.     Charles D. Collins ("Collins'") is an adult male resident of Harris County, Texas where he resides at 10210 Forum W. Drive, Apartment #541, Houston, Texas 77036.

2.     Houston Independent School District ("HISD" or "District") is a public institution of elementary and secondary education located in Houston, Texas.

3.     HISD is the recipient of state and federal funding. HISD may be served with process through its Superintendent F. Mike Miles, 4400 West 18th Street, Houston, Texas 77092.

## JURISDICTION and VENUE

4.    Venue is appropriate in the United States District Court for the Southern District of Texas, in that HISD is located within this district, Collins resides within this district at the time of the pertinent events, and the events that gave rise to this matter occurred in this district, 28 U.S.C. § 1391(b).

5.    This action arises under Title VII of the Civil Rights Act of 1964, as amended.

6.    This action arises under Title I of the Americans with Disabilities Act 1990 (ADA) and its amendments 2008 (ADAAA).

7.    This action arises under Title 18 U.S.C. § 1341 and 18 U.S.C. § 1343.

8.    Collins filed a charge and amended charges with EEOC, a true and correct copy attached as **Ex. 1**. The EEOC issued a Right to Sue on June 2, 2025 and Collins timely files this complaint within ninety days of his Right to Sue Notice. **Ex. 1, pp. 1-2.** An updated affidavit is attached as **Ex. 2**, pp. 1-10.

## RELEVANT BACKGROUND

9.    Collins holds a master's degree in applied mathematics (**Collins** 254:13-14).

10.    Collins worked as a dual-credit teacher and adjunct professor at Challenge Early College HS (Challenge") from August 2015 to June 2023. (**Collins** 231:18-23).

11.    Challenge has been a top-rated school within HISD and the nation for the last 12 years. (**Collins** 207:11-20; **Santos** 11:21-13:3; 89:11-25).

12.    Challenge students can earn college credits while in high school and many students obtain associate's degrees upon graduation. (**Penna** 19:15-20:4).

13.    Collins' has taught courses at Challenge for the past eight years which allowed Challenge students to obtain college credit. (**Collins** 207:9; 234:6-14).

14.  During the 2022-23 school year, Principal Jose R. Santos ("Santos") and Assistant Principal Christopher W. Saikin ("Saikin") served as Collins' supervisors. (Collins 269:11-17).

15.  During the 2023-24 school year, Santos and Assistant Principal Preeti Joseph ("Joseph") served as Collins' supervisors. (Joseph 165:8-21).

16.  Santos is Joseph, Penna, and Saikin supervisor and evaluates their performance at Challenge (Joseph 204:10-12).

## FACTUAL STATEMENTS

17.  In July 2015, Collins was assigned to teach mathematics at Challenge as a dual-credit teacher and adjunct professor. When HISD hired Collins, his principal and supervisor was Tonya R. Miller (Black). During his employment from 2015 to 2022, Collins received satisfactory performance evaluations and was never reprimanded.

### I.  Houston ISD Nonrenewal of Collins 2024-25 Term Contract Was Unlawful

18.  In August 2022, a new principal, Santos was assigned to work at Challenge and became Collins new supervisor.

19.  In December 2022, Collins coworker L. Khalil ("Khalil") made a sexual harassment complaint against him alleging that he had touched her shoulder on two occasions. (Collins 268:13-15) as Ex. 3, p. 1.

20.  Collins had never been accused of any sort of misconduct much less sexual harassment; Collins was shocked and devastated. (Collins 271:7-10) as Ex. 3, p. 2.

21.  Nonetheless, Khalil (White) notified Santos (Latino) of her complaint, and afterwards, on December 13, 2022, Santos confronted Collins (Black) and told him that he knew about Khalil's allegations. *Id.*

22.   Santos then asked Collins to meet with him, Assistant Principal Tracy Celestine, and Khalil the next day to discuss her allegations. Initially, Collins agreed to do so, but later concluded that it was not in his best interest to attend the meeting, and he did not attend. (**Santos** 102:18-24; **Collins** 283:13-16: 287:1-20) as Ex. 3, pp. 3-4.

23.   Collins heard nothing more for a couple of weeks.

24.   On January 6, 2023, Collins was notified in writing by one of HISD's Investigators that Khalil made a complaint of sexual harassment against him that would be investigated. Ex. 3, p. 5-6.

25.   Collins was told details about the complaint could not be disclosed. Ex. 3, p. 7.

26.   Although Santos was aware of the sexual harassment allegations, complaint, and a pending investigation against Collins, Santos continued to require Collins to be in Khalil's presence and in a work environment to his detriment and irreparable harm to his reputation. Collins felt ashamed, humiliated, and anxious. (**Santos** 120:1-25; **Collins** 252:16-24; 253:10-23; 258:13-16; 274:1-3) as Ex. 3, p. 8.

27.   Collins application for FMLA in March 2023 was denied. Ex. 3, p. 9.

28.   Sometime during the 2022-23 school year, Challenge administration decided to use the University of Texas Onramps ("Onramps") courses which allowed students to earn high school and college credits for the 2023-24 school year.

29.   Santos asked Collins to complete the Onramps training during the summer to teach the courses starting the fall of 2023-24 school year.

30.   Collins did not complete the Onramps training over the summer and when Santos contacted him about the training during the summer break, Collins replied that

he simply wanted to take a break from work. Collins completed the Onramps training when he returned to work and before the start of the 2023-24 school year.

31.    When Collins reported to work for the 2023-24 school year, no one informed him of the status of Khalil's complaint or the investigation status; Santos later assigned Collins to work on the same grade-level team as Khalil and mandated weekly meetings in Khalil's presence. (Santos 120:19-25; 121:1-11; Collins 253:11-15) and Santos 9/11/23 email proof at Ex. 3, p. 10-12.

32.    During the 2023-24 fall semester, Challenge employed 3 math teachers – Collins (Black), Anthony D. Ramirez (Latino), and Syed A. Husain (Indian). Husain was assigned to teach Algebra 1. Collins and Ramirez were assigned to teach Onramps.

33.    Ramirez was hired directly by Santos, was provided with extra pay in the form of a stipend, was provided with an assistant teacher, and was assigned to only teach Onramps. (Santos 144:13-20; 147:3-4) as Ex. 4, pp. 1-2.

34.    Collins was assigned two courses, no assistant teacher, and no extra pay. *Id.*

35.    Collins had to prepare new content, quizzes, tests, NES slide decks, NES board configurations, upload data in Google docs, input grades, create lesson plans, used planning period for extra duty, and told not to sit at his desk bell-to-bell. (Santos: 58:1-17) as Ex. 4, p. 3.

36.    In the first week of the 2023-24 school year, Collins told Santos about having anxiety and not being able to sleep because of the sexual harassment complaint lodged against him. Santos did nothing. (Collins 257:2-3; 258:3-5;10-20) as Ex. 4, pp. 4.

37.    Collins later requested FMLA leave due to anxiety, depression, and a hostile work environment. Collins leave was approved, and he remained out from September 18 until October 29, 2023.

38.    Prior to Collins' return from FMLA, he submitted a request for accommodation through the HISD leave department portal. Collins doctor recommended that he transfer to a different school or work environment as accommodation for his anxiety and depression. (Collins 175:1-25; 176:1-22; 179:1-18) as Ex. 4, p. 5.

39.    HISD told Collins via phone communication that a teacher transfer decision is subject to the principal's approval. (Collins 182:2-13) as Ex. 4, p. 6.

40.    HISD policy DK (local) states, "In exercising their authority to approve assignments and reassignments, principals shall work cooperatively with the central office staff to ensure the efficient operation of the district." See Ex. 4, p. 7.

41.    On October 18, 2023, Collins emailed Santos and "requested a transfer" to another school. In the email, Collins complained of the sexual harassment complaint which had been mishandled by HISD and Santos, and which had impacted his "mental and physical health". Collins reasoned, "I feel it is in the best interest of myself and Challenge" for the accommodation. See Ex. 4, p. 8.

42.    In an October 24 email, Santos noted, "I was not informed about the specifics of your medical condition" and "I appreciate you sharing this information" and "please ensure that the necessary documentation is provided." and "the district offers support for mental health" and "I encourage you to explore these options to ensure your well-being" and "any additional support required by your doctor will be reviewed" and "to ensure we follow the appropriate accommodation" but then he flatly denied Collins

reasonable accommodation request stating that "I do not believe a transfer is the optimum solution." **See** Ex. 4, pp. 9-10.

43. On Collins first day back from leave, October 30, Santos met with Collins and sent an email afterwards, "I am reaching out to the Central Area Division" and "I am inquiring about any transfer policies ... for district employees to follow" Ex. 4, p. 13.

44. Santos testified however, "with that request, I called my supervisors. They asked me to forward his request. I sent his request over to my superiors, and I replied to Mr. Collins with their response." (**Santos** 60:10-19) as Ex. 4, p. 14.

45. Yet there is no evidence that Santos engaged in a good-faith interactive process with Collins for reasonable accommodation. (**Santos** 118:9-14) as Ex. 5, p. 1.

46. Collins' subsequent attempts to discuss the accommodation with Santos was met with, "I sent it in". (**Santos** 61:9-12 and 22-25; **Collins** 184:15-19) as Ex. 5, pp. 2-3.

47. Santos testified he sent request to Senior Executive Director of Support, Dr. Daniel Soliz (Dr. Soliz") and Dr. Wendy Craft.[1] (**Santos** 138:13; 138:22) as Ex. 5, p. 4.

48. Dr. Soliz and Dr. Craft never engaged in dialogue with Collins about any reasonable accommodation. (**Collins** 190:11-18) as Ex. 5, p. 7.

49. On October 31, 2023, Collins received a correspondence informing him that Khalil's complaint had been withdrawn in February 2023 and that the investigation was officially closed. (**Collins** 284:8-25) as Ex. 5, p. 8.

---

[1] In his October 24, 2023, Santos fabricated details about a January 2023 meeting where he gave Collins the choice to remain at Challenge or transfer. The January 13 meeting was prompted by a separate email Penna sent to Collins for which he found inappropriate. Santos considered Collins' interaction with Penna unprofessional and met about it. However, no transfer discussion occurred during or after the meeting. The January 13 transfer discussion is false. See Ex. 4, pp. 11-12 for comparison.

50.  Two days later, Santos started his months long campaign of discriminating against Collins through impromptu observations ("SPOTS") to purportedly evaluate Collins teaching performance for attempting to exercise his rights.

51.  Collins was subjected to SPOTS on 6 separate occasions in November 2023 on the 2, 3, 7, 14, 28, and 29; Collins was then subjected to SPOTS on the 5, 12, 18, and 20 in December 2023. **Proof** at Ex. 5, pp. 9-10.

52.  Collins had no time to reacclimate following FMLA leave, and Santos purported support was nothing but a retaliatory attack on Collins.

53.  On December 21, 2023 Santos emailed Joseph about a coaching plan for Collins aimed at enhancing his quality of instruction and elevating his SPOTS. However, Collins SPOTS instead demonstrated no administrative support. (**Santos** 142:1-25) as Ex. 5, p. 11.

54.  No other math teacher was subjected to as many SPOTS as Collins in November, December, and thereafter for the 2023-24 school year. (**Santos** 122:19-25; 123:1-21) as Ex. 5, pp. 12-13.

55.  During the 2023-24 spring semester, Santos assigned Collins an additional course. Collins workload increased to teaching – Onramps, Geometry, and Algebra 2 while Husain and Ramirez each taught one. (**Santos** 143:4-25) as Ex. 5, p. 12.

56.  On January 9, 2024, Santos tasked Collins with teaching students, who were moved from Ramirez class, and were struggling with mathematics. (**Santos** 126:19-25; 129:19-23; **Collins** 251:1-25) as Ex. 5, pp. 13-14.

57.  Santos' decision did not support Collins' T-TESS Goal Setting and Professional Development Plan that he was required to complete for the 2023-24 school year.

58.   Collins was subjected to more SPOTS on January 11, 23, 24, and 29; February 8, 13, 13, 20, and 28. **Proof** as Ex. 6, pp. 1-2.

59.   On February 27, 2024 – Joseph met with Collins and issued his mid-year evaluation wherein Collins performance was rated as Proficient II.

60.   Joseph noted in Collins mid-year evaluation that he should "continue to submit lesson plans timely". **Proof** as Ex. 6, p. 3.

61.   Around the same time, February 27, Collins emailed Santos to clarify details about a meeting with Santos that occurred on February 13 in the math office. Collins had discussed Santos' failure at addressing his accommodation based on a "serious matter". (**Collins** 161:4-16); **Email** as Ex. 6, p. 4.

62.   Santos testified, "complaint of sexual harassment was on the email ... we never had a communication about the sexual harassment." (**Santos** 120:5-8) as Ex. 6, p. 5.

63.   Santos inaccurately recorded conversations with Collins, and Collins alleged that Santos was acting with intent to harm him. *Id.*; (**Collins** 162:7-20) as Ex. 6, p. 6.

64.   On March 6, 2024 – about a week after the email and following his mid-year performance rating of Proficient II, Santos and Joseph issued Collins a directive alleging Collins' failure to timely input grades.

65.   Joseph also placed Collins on a Performance Improvement Plan at the direction of principal Santos. (**Santos** 150:1-5; 159:6-13) as Ex. 6, pp. 7-8.

66.   Joseph falsely testified that Santos had not directed her, and he was not involved in the March 6 directive against Collins. Collins was required to meet twice a week with Joseph. (**Santos** 149:14-25; **Joseph** 242:22-244:7) as Ex. 6, p. 9-11.

67.   Santos admitted that Joseph testimony was false. *Id.*

68. Collins was subjected to more SPOTS on March 4, 19, 19, and 26; April 1, 9, 23, and 30; May 8, 8, 14, 23, and 30, 2024 by Joseph and Santos. **Proof** as Ex. 6, pp. 12-14.

69. Collins was subjected to thirty-two (32) SPOTS by Joseph and Santos.

70. SPOTS generally indicated that Collins teaching lacked clarity, failed to vary use of multiple response strategies (MRS), failed to engage the students, and was not effective.

71. Santos harassed Collins under the guise of instructional coaching meetings, after several SPOTS. Each meeting occurred in the math office with Collins classroom full of students. (**Santos** 81:11-14) as Ex. 6, p. 15.

72. One such meeting occurred immediately after a classroom visit from Santos and Central Division Superintendent Dr. Luz Martinez ("Martinez"). (**Santos** 80:12-20; 83:3-24) as Ex. 6, pp. 16-17.

73. Santos' attacks on Collins' performance were untrue and contrary to Collins appraisals and evaluations from prior years. (**Collins** 207:7-14) as Ex. 7, p. 1.

74. Saikin testified, "I think I can say I had a pretty good relationship with Mr. Collins". (**Saikin** 113:5-8) as Ex. 7, p. 2.

75. Challenge was neither designated as NES-A nor was the staff informed about Santos' decision to operate Challenge as a NES-A school, but Santos was holding Collins to NES-A standards different from the T-TESS standards Collins was required to demonstrate proficiency within and fulfill. (**Santos** 171:13-15) as Ex. 7, p. 3.

76. On April 5, 2024, Santos summoned Collins to a meeting for which he did not allow Collins time to consult his union rep. Santos issued Collins a memorandum for

"Failure to follow Directive and Professional Expectations" which was allegedly based on Collins' failure to respond to a March 21 email sent by Santos.

77.   Santos did not bother to ask whether Collins had received it, had reviewed it, or had an opportunity to respond to the email. (**Santos** 80:1-11) as Ex. 7, p. 4.

78.   A short time after the April 5 meeting, and because of a heated exchange that occurred between Collins and Santos, the school nurse, Mary Culhane, was sent to check Collins' blood pressure and heart rate.

79.   On April 11, 2024, Collins submitted a grievance to HISD against Santos. Dr. Daniel Soliz served as the hearing officer and failed to timely process the grievance. Santos never answered. (**Santos** 62:20-21); **Proof** as Ex. 7, p. 5-6.

80.   On April 15, 2024, Collins received a directive from Santos to attend a Conference for the Record scheduled on April 17, 2024. Collins was not given time to consult with or have union representation. **Proof** as Ex. 7, pp. 7-8.

81.   During the April 15 meeting, after Collins reminded Santos of his agreed-upon accommodation, Santos stated for the first time that the request was denied. (**Collins** 205:19-206:25); **Proof** as Ex. 7, p. 9.

82.   Santos never discussed alternatives.  Santos testified, "I didn't look into it, to be honest" when asked about one possible accommodation. (**Santos** 135:6-7; **Collins** 246:10-25; 247:1-6) as Ex. 7, pp. 10-11.

83.   During the April 17 Conference for the Record, Santos told Collins of his alleged failure to submit grades and lesson plans had affected his performance; Collins' ongoing reluctance to complete a full lesson cycle and implement district strategies such as

multiple response strategies; and Collins misalignment with district values affects his evaluations and overall instructional effectiveness.

84. Santos told Collins that his performance and professional standards are unacceptable, falling short of district standards, expectations, and in violation of district policy DFBB (local) and is therefore, recommending the nonrenewal of Collins' 2024-25 term contract.

85. Santos then proceeded to write, as required, a Conference Summary Letter wherein he manipulated Collins' statements to further justify the nonrenewal of his 2024-25 term contract. *Id.*; (**Collins** 149:14-25); Letter as Ex. 7, pp. 12-13.

86. Santos forced Collins to work under nearly intolerable conditions and acknowledge this in his February 15, email. (**Collins** 141:1-25) as Ex. 7, pp. 14.

87. On or about April 28, 2024, Joseph issued Collins' year-end performance evaluation rating him as "Needs Improvement" which was markedly different from his mid-year evaluation of "Proficient" prior to his protected activity.[2]

88. On May 29, 2024, Santos made hand-delivery of a signed letter from HISD Superintendent Mike Miles as notification that Collins term contract was nonrenewed for the 2024-25 school year. **See** Ex. 8, pp. 1-2.

---

[2] HISD expanded its reason for Collins' nonrenewal. Instead of claiming Collins' failure to timely submit grades or lesson plans had affected his performance, HISD claimed—for the first time ever—that Collins' failures had adversely affected the school administration. Cythia Penna ("Penna") testified that the submission of late grades caused her extra work, obligations, and heartache. (**Penna** 24:4 – 26:24). Despite Penna's testimony, HISD was unable to identify any specific problem, issue, or complaint because of Collins alleged failures. (**Penna** 37:7-18; 85:16-87:4; **Santos** 132-33:16-1; Assistant Principal Christopher Saikin ("Saikin") 156-57:15-5). Penna and Saikin also testified that other Challenge teachers were late with the submission of grades and lesson plans. (**Penna** 95:1-6; **Saikin** 139-40:12-21 and 156-57:15-5). There was testimony that with 3 different math classes, Collins worked a heavier load than most teachers and the other two math teachers at Challenge. (**Santos** 143:8-25). There exists no record evidence of how many times Collins submitted his student's grades or lesson plans late or that Collins submitted his student's grades or lesson plans late more often than any other teacher at Challenge. Instead, HISD does not recall. (**Penna** at 74:6-19 and 97:1-11).

89.  According to HISD Board Policy, the District shall use the teacher consecutive appraisals from more than one year, if available, in making employment decisions. *Education Code* 21.352(e). Santos admits the record evidence does not contain any of Collins 2022-23 appraisals and evaluations. (**Santos** 153:4-10) as Ex. 8, p. 3.

90.  Additionally, Santos' recommendation not to renew Collins contract under this policy shall not be based on an employee's protected activity. Ex. 8, pp. 4-5.

91.  COLLINS' NONRENEWAL WAS BASED ON PROTECTED ACTIVITY

A. Collins met **expectations for his job and performed above standard**

As a math teacher employed by HISD, Collins performed his duties to the best of his skill and ability. He was required to be proficient and effective. It is undisputed that during the 2015-2023 school years, Collins performed his job satisfactorily. For each of those years, HISD had no issue with Collins' performance; rather they praised him, and he received consistent, satisfactory performance evaluations.

Courts have considered satisfactory performance evaluations as evidence that can contradict an employer's claim of poor job performance. For instance, in the case of *San Benito Consol. Indep. Sch. Dist. v. Cruz*, the court noted that Cruz's consistent and "Clearly Outstanding" evaluations in various areas cast doubt on the employer's reasons for her demotion, suggesting that her job performance was indeed satisfactory. *San Benito Consol. Indep. Sch. Dist. v. Cruz*, No. 13-20-00310-CV, 2021 Tex. App. LEXIS 1852 (Tex. App.—Corpus Christi Mar. 11, 2021, no pet.). Similarly, in *Tex. HHS v. Sepulveda*, the Texas Supreme Court found that satisfactory job performance reviews could support an inference that the employer's stated reason for termination was a

pretext for discrimination. *Tex. HHS v. Sepulveda*, 668 S.W.3d 856 (Tex. App.—El Paso 2023, no pet. h.). Here, the same is true.

During the 2023-24 school year, the overwhelming evidence reveals that, despite Santos's documentation of alleged performance deficiencies, Collins' performance remained satisfactory and above. Indeed, the record-evidence demonstrates that (1) Santos unintentionally praised and appreciated Collins' abilities when it came to Collins' teaching Challenge's students; (2) During the middle of the school year, Principal Santos' determined that the students who were in Ramirez's dual-credit math class and struggling with math should be transferred to Collins' dual-credit math class instead; (3) Santos assigned Collins to teach 3 different math classes while assigning other math teachers to teach 1 math class each; (4) Santos allowed Collins continued teaching for the entire 2023-24 school year instead of demanding a substitute when alleging that Collins' performance was horrible, contradicts his purported goal of providing Challenge students with proficient and effective teachers.

The record-evidence further demonstrates that Collins, who was required to manage a heavy workload and schedule in comparison to Challenge other math teachers, did everything in his ability to perform his job and comply with Santos' directives and that he was successful. Collins arrived early to work each day; he worked with Challenge students when they missed tests or classes; he prepared and/or created content for 3 different math courses; he attended department and grade-level meetings, he met with Joseph and Santos to discuss teaching and his SPOTS, he covered other teachers' classes during his planning time, he stayed on his feet from bell-to-bell per Santos directive, he helped struggling students to pass math.

Collins performance was not deficient. If there was ever an occasion when Collins submitted his grades or lessons plan after deadlines, he did so because of issues within his class, his students, or because of his heavy workload. He did not intentionally miss any deadline, and there is no evidence of the number of times that Collins missed a grade or lesson plan deadline, or any alleged missed deadlines disrupted his teaching, students, performance, or Challenge. He met the required T-TESS standards.

Considering the facts which are in evidence, Santos nonrenewal of Collins' term contract with HISD is simply not supported by evidence of non-performance, failure to fulfill duties or responsibilities, failure to comply with directives, policies or administrative regulations or any other reason. Further, the excessive SPOTS by Santos and Joseph to justify Collins nonrenewal cannot be trusted as further discussed below.

B. Santos nonrenewal of Collins 2024-25 contract was retaliatory and unlawful

To establish a prima facie case of retaliation, Collins must show (i) that he engaged in protected activity, (ii) that he suffered an adverse employment action, and (iii) that a causal link existed between the protected activity and the adverse employment action. *Long v. Eastfield College*, 88 F.3d 300 (5th Cir. 1996).

### (i) Collins engaged in protected activities.

An employee engages in protected activity when they: (1) oppose discriminatory practice; (2) make or file a charge of discrimination; (3) file a complaint; or (4) testify, assist, or participate in any manner in an investigation, proceeding, or hearing related to discrimination. *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131 (Tex. 2015) An employee's informal complaint to an employer may also constitute participation in a protected activity, provided that the complaint is in opposition to conduct that is

unlawful, and the employee holds a good-faith, reasonable belief of the conduct's unlawfulness. *Guajardo v. Univ. of Tex. Med. Branch*, No. 01-17-00288-CV, 2018 Tex. App. LEXIS 3135 (Tex. App.—Houston [1st Dist.] May 3, 2018, no pet.); *Cavazos v. Springer*, 2008 U.S. Dist. LEXIS 58317 *22-26, 2008 WL 2967066 *7 (S.D. Tex. Aug. 1, 2008) (citing *Burlington N. &amp; Santa Fe Ry. Co. v. White*, 548 U.S. 53, 58, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).

> In this matter, Collins engaged in protected activity, at least: (1) August 2023 disclosure to Santos that sexual harassment complaint cause anxiety and sleep issues; (2) October 18 request for accommodation; (3) October 24 email from Santos discussing sexual harassment causing mental distress; (4) February 2024 communications about Santos failing to address sexual harassment, recording conversations inaccurately, and intentionally causing Collins harm.

### (ii) Collins suffered adverse employment actions.

The facts demonstrate that it was not until after Collins' written email accommodation request and complaint in October 2023, that Santos and Joseph (by Santos' direction) began to heavily scrutinize and document alleged deficiencies with Collins' performance. Notably, the record-evidence is devoid of evidence that Santos and Joseph had issue with Collins' performance or considered recommending his nonrenewal before his protected activities. But after his protected activity, Santos:

> (1) Fabricated evidence; (2) Failed to act on Collins' accommodation request; (3) Heavily scrutinize and documented Collins' teaching performance; (4) Issued memorandum directives of poor performance to support the nonrenewal recommendation; (5) Increase Collins workload, instructional preps, and assigned struggling students; (6) Harassed Collins in math office while students present; (7) Forced Collins to work under suboptimal conditions; and then (8) Recommended Collins' 2024-25 term contract non-renewal.

Santos's acts toward Collins after his protected activity constitute adverse action under the Texas Labor Code. An "adverse employment action" is one that a reasonable

employee would find to be materially adverse and is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Cantu v. Hidalgo Cty.*, 398 S.W.3d 824 (Tex. App.—Corpus Christi 2012, pet. denied; *Burlington N. &amp; Santa Fe Ry. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). It is without question that Santos' actions toward Collins following his protected activity would dissuade a reasonable employee from engaging in protected activity. No employee deserves to be heavily scrutinized, overworked, micromanaged, and then recommended for nonrenewal.

### (iii) Collins protected activities causally linked to the adverse actions

There exists a causal link between Collins' protected activities and Santos' adverse action against him—considering, among other facts, the very close timing between his protected activity and the adverse actions listed above. Less than two weeks after Collins' October 18, 2023 email and at his first opportunity, Santos began implementing each of the adverse acts against Collins. The Fifth Circuit has held that such close timing between an employee's protected activity and an adverse action against the employee provides the causal connection needed to make out a prima facie case of retaliation. *Tex. State Office of Admin. Hearings v. Birch*, No. 04-12-00681-CV, 2013 Tex. App. LEXIS 9065 (Tex. App.—San Antonio July 24, 2013, pet. denied); *Mattie Sue Clark v. Chickasaw County Mississippi*, et. al, 2010 U.S. Dist. LEXIS 97227 (5th Cir. Sept. 10, 2010) (finding that a plaintiff who produced evidence that she was demoted one week following her complaint of discrimination had presented sufficient casual connection between the protected activity and the employer's adverse action); *Evans v.*

*City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001) (same); *McCoy v. City of Shreveport*, 492 F.3d 551, 562, n. 28 (5th Cir. 2007) (same).

## C. Santos nonrenewal of Collins term contract is pretextual and untrustworthy

While Santos contends that he proposed Collins' nonrenewal because of performance issues, the record is replete with evidence that his heavy documentation of Collins and stated reasons for his recommendation are false and cannot be trusted. *Tex. HHS Comm'n v. Enriquez*, 642 S.W.3d 21 (Tex. App.—El Paso 2021, no pet.) (recognizing that a plaintiff could show pretext by revealing weaknesses, implausibility, inconsistencies, or contradictions in the employer's stated reason for termination); *Baron Aviation Servs., Inc. v. Kitchen*, 679 S.W.3d 330 (Tex. App.—Eastland 2023, pet. denied) (same). Collins not only did his job with competence, skill, and ability during the 2023-24 school year, Santos assigned Collins to teach multiple classes instead of one (as other math teachers) and to teach struggling students conflicts with his assertions that Collins' performance was substandard or deficient. Contrarily, Santos' actions positively demonstrate that there were no issues with Collins' abilities and that Collins was performing as required and expected.

That Santos argues Collins' alleged late grade and lesson plan submissions to support his nonrenewal recommendation without pointing to a single situation when Collins' alleged lateness caused a problem for Challenge or any of its students and without identifying how many times Collins' was allegedly late submitting grades or lesson plans suggest that these "issues" were no material issues at all but instead a method by which to seemingly justify Collins' removal.

That Santos assigned Collins to teach more students in the second semester than in the first semester demonstrates that Santos was not working with Collins to help him with any alleged deficiency in submitting grades or lesson plans, or teaching that existed but instead had created a method by which to keep Collins so busy that he could not reasonably keep up with all the job requirements.

That Joseph found it necessary to provide false testimony at the hearing of Collins' nonrenewal arguably suggests that she knew Santos' actions towards Collins were atypical, suspect, and retaliatory.

That Joseph agreed to provide Collins with a recommendation letter after Santos' nonrenewal decision suggest that Joseph only went along with Santos' plan of over scrutinizing and heavily documenting Collins during the 2023-24 school year, but, in fact, did not agree with Santos' actions. Given Santos' many questionable actions and shifting explanations for his treatment of Collins, a question of pretext exists. *Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2002) (finding that an employer's inconsistent explanations for its employment decisions may permit a jury to infer that the proffered reasons are pretextual) (emphasis added); *Howard v. Jacobs Engineering, Inc.*, 716 F.Supp.2d 510, 2008 U.S. Dist. LEXIS 116620 *16-18 (S.D. Tex. Nov. 12, 2008) (finding that an employer's inconsistencies create an issue of material fact over the true reason for which plaintiff was terminated).

Finally, Collins avers that he performed his job satisfactorily and met the expectations of his position. A reasonable jury (and this Court) could conclude that Collins' term contract would not have been non-renewed but for his protected activity. *Russo v. Smith Int&#39;l, Inc.*, 93 S.W.3d 428 (Tex. App.—Houston [14th Dist.] 2002,

pet. denied); *Clark*, 2010 U.S. Dist. LEXIS 97227 at \*14. *Evans*, 246 F.3d at 356 (finding that the close temporal proximity between plaintiff's protected activity and defendant's adverse action plus the lack of documentary evidence to support disciplinary problems, give rise to a conflict of evidence on the ultimate issue of retaliation by defendant); *Vadie v. Miss. State Univ.*, 218 F.3d 365, 374 n.23 (5th Cir. 2000) (same).

92.   Santos had no genuine basis for the nonrenewal of Collins' term contract and Collins testified under oath that he went above and beyond to do his job during the 2023-24 school year. (Collins 255:22-24; 259:17-23; 261:1-25) as Ex. 8, pp. 6-7.

93.   Collins did not sign a term contract for the 2024-25 school year and thereafter.

94.   Collins effectively lost his work assignment at Challenge, lost his dual-credit teaching position, lost his adjunct-professor position, and associated benefits and compensation for the 2024-25 school year and thereafter upon the expiration of his 2023-24 term contract. (Santos 9:1-13; Collins 232:1-25; 233:1-25) as Ex. 8, pp. 10-12.

## II.   Houston ISD orchestrated a Scheme to Defraud Collins

### Object of the Scheme

95.   The object of the scheme was for HISD to deliberately and fraudulently maintain Collins "active employment" as a defense against potential legal claims arising from the non-renewal of his 2024-25 term contract.

### Manner and Means of the Scheme

96.   It was part of the scheme that on June 14, 2024, HISD caused an anonymous email containing a PDF salary letter. The salary letter misrepresents Collins employment and includes information about his compensation, work location, and work

calendar for the 2024-25 school year. HISD misrepresentation was material and intended for Collins to rely on the salary letter. See Ex. 9, pp. 1-2.

97. In reality, the salary letter was untrue and HISD knew it was false.

98. The calendar dates do not correspond to the standard 10-month (187-day) calendar and duty schedule teachers are required to complete.

99. Computer expert confirmed metadata from the PDF salary letter identifies a creator who is not and was not employed by HISD at the PDF creation. Jasmine R. is not listed as an employee in HISD personnel records. See Ex. 9, pp. 3-4.

100. It was part of the scheme that between August 14 and October 9, 2024, HISD made unauthorized electronic payroll deposits on five separate dates: August 14, August 28, September 11, September 25, and October 9. These payments, totaling $14,351.71, represent the first five of 26 paychecks scheduled under the 2024-25 term contract. See Ex. 9, pp. 6-10.

101. HISD misrepresentations were in reckless disregard of the truth, and the payroll activity circumvented the HISD school board's legal authority to contract for and reinstate teacher employment. *Texas Education Code § 21.002(c)*.

102. In further of the scheme, HISD manipulated payroll data in the SYTD, TRSYTD, and CYTD columns for August 14, August 28, September 11, September 25, and October 9, 2024 paystubs to conceal evidence of Collins 2023-24 term contract expiration and to give false appearance his employment continued into the 2024-25 school year. For instance, SYTD data on August 14 paystub was altered to match that of July 31 paystub. See Ex. 9, pp. 5 and 6.

103. In furtherance of the scheme, on October 23, 2024, HISD altered data and made unauthorized entries in the payroll software. The October 23 paystub contains duplicated fields — Regular pay*; Pay per Escrow Account*; Escrow Adjustment*; Local Personal Leave*; State Personal Leave*; Unpaid Leave*; and O/P Gross Payment* — not produced in any other paystub. See Ex. 9, pp. 11-12.

104. The October 23 paystub contains two duplicated Regular Pay* entries for unauthorized funds totaling $15,769.60 in negative earnings. The negative earnings were offset with $9,241.26 in unauthorized funds from Local-State Personal Leave*; $590.80 from O/P Gross Payment; and $6,528.37 from a second duplicated O/P Gross Payment*. Id.

105. The Regular Pay* of $14,976.78 in negative earnings, to offset the five unauthorized paychecks deposited on August 14, August 28, September 11, September 25, and October 9, 2024, do not match the $14,351.71 in earnings. Additionally, the $7,119.17 entry for overpayment has no calculated earnings rate and earnings hour to support the data. Id.

106. In furtherance of the scheme, between October 23 and December 31, 2024, HISD processed unsupported overpayments on five occasions: October 23, November 6, November 20, December 4, and December 31. The unauthorized transactions $590.80, $974.82, $974.82, $854.81, and $974.82 totaled $4,370.07. See Ex. 10, pp. 1-3, 5.

107. In furtherance of the scheme, on November 5, HISD sent an anonymous letter to Collins via U. S. mail to elicit payment for the open enrollment benefits premium for health insurance. HISD intended for Collins to act. See Ex. 10, pp. 6-7.

108. In furtherance of the scheme, on November 21, HISD falsified an unpaid leave request and generated email approval through the district's OneSource (Employee Self Service) ESS portal deducting 77.5 hours from my personal leave. **See** Ex. 10, p. 8.

109. In furtherance of the scheme, on November 22, HISD sent an anonymous letter to Collins via electronic mail to elicit payment for the open enrollment benefits premium for health insurance. HISD intended for Collins to act on its misrepresentation. **See** Ex. 10, pp. 9-11.

110. In furtherance of the scheme, on December 9, HISD falsified an unpaid leave request and generated email approval through the district's OneSource ESS portal deducting 40 hours from my local-state personal leave. See Ex. 10, p. 12.

111. On December 10, the Board overturned Collins 2024-25 term contract nonrenewal. When a nonrenewal is overturned, the teacher is entitled to relief — the issuance of a Chapter 21 term contract, reinstatement, and back pay or other lost compensation. *Texas Education Code § 21.257.*

112. As part of the scheme, on December 13, HISD anonymously emailed Collins, "as of the date of this email, you are still an active employee in the HISD HR system. On pay date of 12/18/2024 you are receiving HISD pay, which covered the benefit premiums due as outlined in the letter sent to you on 11/22/2024." **See** Ex. 10, p. 13.

113. In furtherance of the scheme, on December 18, HISD electronically deposited a payroll check for an unauthorized payment to cover the open enrollment benefits premium for Collins health benefits without consent. **See** Ex. 10, p. 4.

114. As part of the scheme, on December 20, 2024, HISD falsified an unpaid leave request and generated email approval through the district's OneSource ESS system deducting 80 hours from my local-state personal leave.

115. As part of the scheme, on January 13, 2025, attorney Catosha Woods emailed details which would only be known to a person closely aligned with or actively executing the scheme. Attorney Catosha Woods stated, "District records indicate that your client received paychecks on 8/28, 9/11, 9/25, and 10/9. He also received a partial check on 12/18/24 and a check on 1/15/2025" Counsel Woods continued falsely stating, "The team is auditing his time now to ensure accuracy" and "The board voted to reinstate Collins and the district is prepared to honor his contract." See Ex. 11, p. 1.

116. Counsel Woods implicates herself in the scheme by revealing knowledge of payroll activity set to occur two full days on January 15, 2025.

117. Counsel Woods further implicates herself in the scheme to defraud by disclosing knowledge of a purported team auditing Collins payroll for accuracy at least seventeen days before January 30.

118. In furtherance of the scheme, on January 30, 2025, HISD anonymously emailed an overpayment notice of $10,898.44 outlining 13 unauthorized deductions of $838.34 per paycheck. HISD employees Ayanna Vaughn, Brent George, Juana Faz, and Melissa A. Campos are all copied in the email. See Ex. 11, p. 2.

119. In furtherance of the scheme, on February 10, 2025, HISD anonymously emailed an overpayment notice of $14,736.64 outlining 13 unauthorized deductions of $736.94 per paycheck. HISD employees Ayanna Vaughn, Brent George, Juana Faz, and Melissa A. Campos are all copied in the email. See Ex. 11, p. 3.

120. The January 30 and February 10 overpayment notices contradict overpayment entries in October 23, November 6, November 20, December 4, December 18, December 31, 2024, and January 15, 2025 paystubs. See Ex. 10 and Ex. 11, p. 4.

121. The paystubs dated August 14, August 28, September 11, December 18, 2024 and January 15, 2025 are not included or intentionally omitted from January 30 and February 10 overpayment notices.

122. September 25 and October 9, 2024 paystubs contain no entries for overpayment, but there is a $2,688.17 entry for September 25 in the January 30 and February 10 overpayment notices.

123. In furtherance of the scheme, between February 12 and March 12, 2025, HISD processed three overpayments on two separate occasions. The unauthorized transactions $ 3,456.18, $590.80, and $3,840.20 totaling $7887.18, negatively impacts Collins' wages, benefits, contributions, tax deductions, and future earnings. See Ex. 11, pp. 5-7.

124. March 12 and July 16 paystubs reflect overpayment balances of $22,625.82, with remaining balances of $21,888.88 and $15,256.42, respectively. See Ex. 11, p. 8.

125. HISD can neither produce a written consent nor a signed agreement to deduct overpayments and Collins' payroll account should have been closed or disabled in the payroll system after the July 2024 expiration of his 2023-24 term contract.

126. HISD can neither produce a loan agreement, request for advance payments, nor prove that manipulated data from the payroll and accounting software were made in error or are miscalculations.

127. Upon observation and comparison, evidence indicates similar use of language including common word choices, common date formats, common phrases, and tone across the following documents: the HISD anonymous June 14 email; the HISD anonymous letters and emails dated November 5, November 22, and December 13; the Counsel Woods emails dated December 17, December 24, and January 13; the notations in the January 30, 2025 overpayment notice; and the notations in the February 10, 2025 overpayment notice.

III.    Houston ISD demonstrated no Good-Faith Effort to Resolve This Matter

128. On September 24, 2024, and after a two-day hearing, the Texas Education Agency appointed Independent Hearing Examiner issued a recommendation that, "the Board of Trustees of HISD adopt the foregoing Findings of Facts and Conclusions of Law and enter an order to deny" the nonrenewal of Collins' 2024-25 term contract.

129. On December 10, 2024, and after a one-day hearing, the HISD school board voted and issued an order to "adopt the foregoing Findings of Facts and Conclusions of Law of the Hearing Examiner and enter an order to deny" the nonrenewal of Collins' 2024-25 term contract.

130. On December 16, a written letter of the Board's December 10 decision was issued via email to Collins' attorney. *Texas Education Code § 21.208.* See Ex. 11, p. 9.

131. Around an hour before Collins' attorney was in receipt of the letter, Dr. Soliz called Collins on his cell phone at 2:22 pm. Collins directed all communications to his attorney. See Ex. 11, p. 10.

132. On December 16 at 5:19 pm, Dr. Soliz sent an email with an attached memorandum from Dr. Martinez reassigning Collins and directing him to report on December 18. See Ex. 11, pp. 11-12.

133. On December 17, Counsel Woods emailed misrepresentations stating that "Mr. Collins remains an employee of the district" and "if he does not report, we will have to take appropriate action to address this failure to follow the directive." See Ex. 11, p. 13.

134. On December 18, Dr. Soliz emailed a second memorandum entitled "Failure to Report for Duty" telling Collins "Failure to follow a supervisor's directive could result in disciplinary action, up to and including a recommendation for termination or nonrenewal of your employment contract with the Houston Independent School District". See Ex. 11, pp. 14-15.

135. Collins' request for his 2024-25 term contract went unanswered. *Id.*, p. 13.

136. According to HISD Board policy DCB (legal), if a district requires a person, by policy, job description, or contract, to hold a certificate issued under Education Code Chapter 21 ... the district is required to employ the person under a term contract.

137. Additionally, a term contract must be in writing; include the terms of employment; may include other provisions; subject to the approval of the board; and shall be provided to each employee. *Texas Education Code 21.204 § (a) to (d)*.

138. Dr. Soliz, Dr. Martinez, and Counsel Woods knew or should have known that Collins' employment had neither been reinstated by the Board nor had Collins signed a new term contract for the 2024-25 school year and thereafter. *Id.*

139. Collins contends that employment with HISD is not feasible, has been detrimental to his career, and will continue to be detrimental to his health.

140. HISD has demonstrated no good-faith effort to resolve this matter.

## CONCLUSION

Collins has presented substantial and credible evidence raising genuine issues of material fact that his 2024–25 non-renewal, effectively termination, was the result of retaliation for engaging in protected activity. HISD orchestrated a scheme to cover up its violations and failed to take corrective action given the opportunity. Collins is not seeking special treatment, only to clear his name, clear his personnel file, and correct the record. Accordingly, Collins respectfully asks this Jury (and the Court) to weigh the evidence and help remedy this dispute.

### Failure to Accommodate – Count I
### Chapter 21 of the Texas Labor Code
### Title I of the Americans with Disabilities Act 1990 and its
### amendments 2008 (ADAAA), 42 §§ 12111-12117, and 29 C.F.R. § 1630 *et seq*.

141. Collins replead and reallege each allegation in paragraphs 1 through 140 as if fully set forth herein.

142. Collins is individual with disability (anxiety and depression), real, perceived, and/or record thereof.

143. Collins can perform essential functions of job with reasonable accommodation.

144. HISD had knowledge and never engaged in the interactive process.

145. HISD made no reasonable accommodation.

### Retaliation – Count II
### Chapter 21 of the Texas Labor Code
### Title I of the Americans with Disabilities Act 1990 and its amendments
### 2008 (ADAAA), 42 U.S.C. § 12203, 42 §§ 12111-12117, and 29 C.F.R. § 1630 *et seq*.

146. Collins replead and reallege each allegation in paragraphs 1 through 140 as if fully set forth herein.

147. Collins reasonable accommodation request is protected activity under ADA.

148. HISD never acted on Collins request for accommodation.

149. Collins was subjected to frequent and unjust performance observations.

150. HISD nonrenewed Collins term contract for the 2024-25 school year

151. HISD adverse actions are casually linked to Collins' protected activity.

**Retaliation – Count III**
**Chapter 21 of the Texas Labor Code**
**Title VII of the Civil Rights Act of 1964 § 704(a), 42 U.S.C. § 2000e-3(a)**

152. Collins replead and reallege each allegation in paragraphs 1 through 140 as if fully set forth herein.

153. Collins' participation in a sexual harassment complaint lodged against him and his complaints constitute protected activity under Title VII.

154. Collins was subject to increased scrutiny and his job made more difficult.

155. Collins was issued directives and placed on a performance plan for which he was required to meet twice a week with Joseph.

156. Collins was harassed in the math office in the presence of students.

157. Collins term contract was nonrenewed for the 2024-25 school year.

158. Collins protected activity is casually linked to Santos adverse actions.

**Disparate Treatment – Count IV**
**Chapter 21 of the Texas Labor Code**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

159. Collins replead and reallege each allegation in paragraphs 1 through 140 as if fully set forth herein.

160. Santos testified that "I'm guessing he's Hispanic, because he looks Hispanic" when questioned about Ramirez and the race of Challenge math teachers.

161. Santos testified that "Mr. Ramirez is a good teacher."

162. Santos moved struggling math students from Ramirez class to Collins class.

163. Santos secured an assistant teacher for Ramirez but not Collins.

164. Santos paid Ramirez a stipend and concealed that information from Collins.

165. Santos assigned Ramirez Onramps; Collins Onramps plus two more courses.

166. Santos subjected Collins to more SPOTS than his fellow math teachers.

<u>Fraud – Count V</u>

167. Collins replead and reallege each allegation in paragraphs 1 through 140 as if fully set forth herein.

168. HISD made material misrepresentations to Collins about his active employment upon sending the June 14 salary letter and thereafter.

169. HISD misrepresentations about Collins' active employment are false.

170. HISD misrepresented payroll data with reckless disregard for the truth.

171. HISD sent mail and electronic misrepresentations to induce Collins to act.

172. Collins' reliance on HISD misrepresentations, concealments, and/or omissions caused him to delay or forgo a reasonable (or proper) course of action.

173. Collins suffered actual harm or damage.

<u>Mail Fraud (18 U.S.C. § 1341) – Count VI</u>

174. Collins replead and reallege each allegation in paragraphs 1 through 140 as if fully set forth herein.

175. HISD executed a scheme to defraud Collins that involved material misrepresentations, concealment, and/or an omission about his active employment.

176. HISD used U.S. mail on November 5 in furtherance of or to execute the scheme.

<u>Wire Fraud (18 U.S.C. § 1343) – Count VII</u>

177. Collins replead and reallege each allegation in paragraphs 1 through 140 as if fully set forth herein.

178. HISD executed a scheme to defraud Collins that involved material misrepresentations, concealment, and/or an omission about his active employment.

179. HISD used wire communication on June 14, October 23, November 22, December 9, December 20, 2024, January 30, and February 10, 2025 in furtherance of or to execute the scheme.

### Intentional Infliction of Emotional Distress (IIED) – Count VIII

180. Collins replead and reallege each allegation in paragraphs 1 through 140 as if fully set forth herein.

181. Santos assigned Collins to the same academic team as his accuser and took no remedial action after meeting with Collins upon his return from FMLA leave.

182. Santos sustained a seven-months campaign conducting SPOTS to compile documentation justifying his nonrenewal of Collins' contract.

183. Santos fabricated statements in his October 24, 2023 email, and the Conference for the Record April 17, 2024 summary letter sent to HISD human resources.

184. HISD central division leadership harassed and intimidated Collins just three workdays after the Board overturned his 2024-25 contract nonrenewal.

185. HISD orchestrated a fraudulent scheme and shockingly furthered the scheme thereafter Collins filed an EEOC charge in October 2024.

186. HISD conduct is reckless, malicious, fraudulent, and shocks the conscience.

### PRAYER FOR RELIEF

1. Award Collins enhanced (treble) monetary damages pursuant to civil practice and remedies for egregious, malicious, and willful misconduct.

2. Award Collins exemplary damages against individual misconduct for amounts reasonably decided by jury (or the Court).

3. Award Collins backpay, front pay, and retirement compensation for wages and benefits lost due to discrimination and fraud.

4. Award Collins compensatory damages for non-monetary losses for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

5. Award Collins' attorneys' fees and costs to recover his legal expenses.

6. Award Collins any other relief the Court deemed proper and equitable.

Date: 29th day of August 2025.                    Respectfully submitted,

Charles D. Collins
*Plaintiff Pro Se*

## CERTIFICATE OF SERVICE

I, Charles D. Collins, do hereby certify that I have served a true and correct copy of the foregoing complaint, via process server, to the following Superintendent of record for the Houston Independent School District.

F. Mike Miles
Superintendent of Schools
Houston Independent School District
4400 West 18th Street
Houston, Texas 77092
Tel: (713) 556-6300
Fax: (713) 556-6323

This, the 29th day of August 2025.

Respectfully submitted,

Charles D. Collins
Plaintiff Pro Se
10210 Forum W. Drive #541
Houston, Texas 77036
*charscollins@gmail.com*
(601) 842-5195

32